*In re* CRUMB'S WILL.

(*Surrogate's Court, Madison County.* September 25, 1888.)

1. WILLS—PROBATE—CITATION TO NEWLY-DISCOVERED HEIR.—
   In the absence of statutory provision the surrogate on a petition by the proponent of a will theretofore admitted to probate, alleging the existence of a newly-discovered heir, may issue a citation to such heir to show cause why he should not be bound by the probate proceedings the same as if he had been a party thereto.

2. SAME—VALIDITY—FAILURE TO READ BEFORE SIGNING—EVIDENCE.
   The will of a testator in good health and of reasonable intelligence and business capacity, need not be read to or by him, where he is informed, before signing, that it has been drawn according to his directions, and the testimony of the draughtsman, and the *memoranda* of its contents made by him when directed by the testator to prepare it, show that it was so drawn.

On citation to Sidney Crumb, a newly-discovered heir and next of kin of Joseph H. Crumb, deceased, to show cause why the proceedings theretofore had in which the decedent's will was admitted to probate should not have the same effect as if the said Sidney Crumb, had been originally summoned therein.

*Wallace E. Burdick,* (*O. W. Kellogg,* of counsel,) for proponent. *Mason & Cushman,* for contestant.

KENNEDY, S. The testator, Joseph H. Crumb, died in the town of Deruyter, Madison county, N. Y., the 21st day of May, 1887. He left a will, executed by him the 6th day of May, 1884, in and by which he gave all his property, amounting to $75,000, to his wife, and appointed her the sole executrix of his will. He left no children surviving him, and, at the time the executrix filed her petition for probate of the will, it was supposed by her that he left no heir at law or next of kin, except J. Hamilton Crumb, a half-brother, residing in the state of Ohio. The will was admitted to probate the 18th of July, 1887. Some months after the probate of the will she learned of the existence of one Sidney Crumb, a son of a deceased half-brother, who should have been cited

to attend the probate of the will. For the purpose of curing any defect there might have been in the proceeding to prove the will by reason of the omission to serve a citation upon Sidney Crumb, the executrix filed a petition in this court on the 21st of February, 1888, setting forth the proceedings that had been had in surrogate's court to prove her husband's will, and alleging the existence of this newly-discovered heir at law and next of kin, whereupon a citation was issued to said Sidney Crumb, returnable April 7, 1888, to attend the probate of the will of said testator, and to show cause, if any he had, why the evidence taken, and the proceedings theretofore had to prove the will, should not stand, and why the decree admitting said will to probate, and adjudging the same to be a valid will to pass real and personal estate, should not be sustained, and why he should not be bound thereby with the same force and effect as if he had been previously cited to attend the original probate thereof.

The Code has made no provision for such a contingency as above referred to, and no precedent could be found to aid the court in determining what the practice should be under such circumstances in the surrogate court, but we think there can be doubt of the correctness of the practice in this case, for the following reason, the surrogate has general jurisdiction to take proof of wills, and to admit them to probate. This must be done in the manner pointed out by statute, provided the legislature has prescribed a certain mode of procedure; but, when it has failed to designate the manner in which the court may proceed to obtain jurisdiction of a person necessary to the probate of a will, the court, among its undefined and incidental powers, has the legal right to adopt such a mode of practice as will best accomplish such a result, and fully protect the legal rights of all persons interested in the proceedings. In *Campbell* v. *Logan*, 2 Bradf. Surr. 90, the court makes use of an expression which clearly states the ground that justifies the action of the surrogate in this matter, and is as follows: "The power to take the proof of wills being given generally, the mode of its exercise in a case not provided for by statute must be regulated by the court in the exercise of a sound discretion, according to the peculiar circumstances of each particular case." By service of a citation upon Sidney Crumb in the manner and form adopted in this case, he was fully apprised of his relations to this proceeding; and upon the return thereof he appeared by his attorneys, and filed his objections to the probate of the will, and thereupon a trial was had the same in all respects as if he had been cited in the original proceeding to prove the will. Possibly some other mode of practice may have been as well, or better, but by pursuing the course we have stated the former decree of the court admitting the will to probate remained undisturbed and unrevoked, and all acts of the executrix remained in full force and effect, while every legal right of the contestant was preserved to him.

Having stated the manner in which the contestant was made a party to these proceedings, it is now our duty to determine the questions at issue. We shall hold that the will in question was duly and legally executed, that at the time of its execution Joseph H. Crumb was not under the undue influence or restraint of his wife, or any other person, and that he was of sound, disposing mind and memory, and competent to make his last will and testament. These findings cover all the objections of the contestant, and we might refrain from the disscussion of any question arising from the facts proven in this case, and upon which the contestant relies to reject the will; but we think it due to the respective counsel that we should state some of the reasons which lead us to the conclusion that the will must be admitted to probate. In so doing, however, we shall confine the discussion to this single proposition, to-wit: Is it necessary to the valid execution of a will that it should be read by or to the testator before its execution by him? The testator, at the time of his death, was 60 years of age. He had been an active and successful business man in the town of Deruyter; a man who stood high in the estimation of his ac-

quaintances, and who had for many years been one of the prominent and influential men of his town; a man well informed, of excellent judgment; a man trained in the methods of business, accustomed to execute papers involving large transactions; whose opinion in regard to business affairs was frequently sought and respected by his neighbors; a man whose integrity was unquestioned, and whose convictions were of a positive and decided character. At the time of making his will he had accumulated, by his own industry and energy, a property amounting to $75,000, and at the time of making his will, as well as up to the day of his death, was active in the conduct of his varied business affairs. His three children died in their infancy, many years ago; so that his only heirs at law and next of kin were J. Hamilton Crumb, a half-brother, and an unknown nephew, Sidney Crumb, both in Ohio.

The will in question was drawn by L. B. Kern, Esq., of Deruyter, a gentleman who for 20 years or more had been Mr. Crumb's attorney, his intimate personal friend, and confidential adviser, and was witnessed by Mr. Kern and his wife. The circumstances preliminary to and attending its execution, as testified to by Mr. Kern, are as follows: "April 29, 1884, Mr. Crumb called at the office of Mr. Kern, and said to him he supposed he ought to make a will; that at the present price of real estate he was worth $75,000; and that he desired to give all his property to his wife, except four or five thousand dollars, which he wished to give in small legacies to different persons; that he was not indebted to his relations, as they had never done anything for him, and he did not propose to give them much." Mr. Kern testifies that he made a written memorandum of Mr. Crumb's suggestions as to his will, and that he drew one during that day as requested by him; that in the evening the testator called at his office, and said that he had talked with his wife about the matter, and she was opposed to his making such a will, and the will was not executed. May 2, 1884, he again called, and requested Mr. Kern to draw another will, leaving out some of the legacies named in the former unexecuted will, and said he would talk with his wife about it, and see if she would not be satisfied with it. On the 6th of May, 1884, Mr. Crumb again called upon Mr. Kern, and said his wife would not consent to his executing this will, and that he and his wife had agreed upon the following arrangement for the disposition of each other's property, to-wit: that he was to will all his property to her, and she to will all her property to him, and each were to leave a written memorandum of gifts, which the survivor was to distribute in pursuance of Mr. Crumb's directions. He drew two wills, one for Mr. Crumb and one for his wife, each bequeathing to the other all the property he or she possessed; and at the testator's request he and his wife went to Mr. Crumb's house that evening to attend to the execution of the two wills. After Mr. Kern went into the house, Mr. Crumb said he had desired to give Emma Crumb a little remembrance, and to give a half-sister something, to which Mrs. Crumb said that his relatives had never done anything for him, and had never treated him decently, and he was under no obligations to give them anything, and so far as the other persons were concerned, she would carry out his wishes if she lived the longest; whereupon Mr. Crumb said, "I have had Mr. Kern draw the wills as we agreed, embodying this arrangement." At this point of time Mr. Kern said to Mr. Crumb that he had drawn the wills in pursuance of what he had told him, and that they were ready for execution, whereupon Mr. Crumb signed the will, declaring it to be his last will and testament, and requesting Mr. and Mrs. Kern to sign the same as witnesses, which they immediately did, in his presence; that the said will was not read by Mr. Crumb before its execution, nor was it read to him by any one, nor had he seen it before this time; that from the time the will was drawn Mr. Kern had the sole custody of it, and he had not disclosed its contents to any one; that immediately after the will was executed Mr. Kern and Mr. Crumb left the house together, and went down town, leaving the will upon the table; Mrs.

Crumb's will being also executed at the same time, and left in the same place. Mr. Kern testifies that Mr. Crumb gave him directions from which he drew the will; that he drew it precisely according to the instructions given him, exactly as he was directed to draw it; that Mr. Crumb was not in any way deceived as to what the contents of the will were, as he drew it just as he asked him to; that he made the written memorandum from which the will was drawn while Mr. Crumb was at his office, and which is as follows: "J. H. Crumb's will, May 6, 1884, and Sarah M. Crumb's will. Crumb gives all his property of every kind to his wife; she to be executrix, with power to sell and convey, etc. Sarah M. Crumb gives all her property to J. H. Crumb; he to be executor, with power to sell, etc.; Kern and wife to be witnesses;" that he made this memorandum at his direction, as he directed him to, and in his presence, and from it he drew the two wills, incorporating in each of them the provisions of the memorandum; that he did not read the will to Mr. Crumb, because he knew what it was, or knew what the will would be from the memorandum he gave him. The following questions and answers appear in the evidence of Mr. Kern: "*Question.* At the time you supervised the execution of this will, did you intend to comply with all the requirements of the statutes and the law, making it a valid will? *Answer.* I did; and I should have read it over to him if it had not been for the conversation between Mr. and Mrs. Crumb, because I supposed he understood it. *Q.* You have not any doubt about the fact that Mr. Crumb at the time of this execution did understand the contents, have you? *A.* I don't think he could have known except by taking my word. It was not read to him. *Q.* You haven't any doubt about the fact that Mr. Crumb at the time of its execution did understand the contents, have you? *A.* I have not, if he believed me. *Q.* Why should you believe that he understood its contents if he didn't read it, or hear it read? *A.* Because he left the memorandum with me to draw two wills, and he had every reason to believe that I would draw it according to his memorandum. *Q.* Did you tell him that you had so prepared it? *A.* I told him that I had prepared the two wills according to the talk we had at my office. *Q.* And according to his direction? *A.* Yes, sir. *Q.* And was that before the execution of the will? *A.* It was before the execution of the will." Mrs. Kern agrees with her husband as to what occurred at Mr. Crumb's house at the time of the execution of the wills. Upon the other hand, Mrs. Crumb testifies that both wills, instead of being drawn by Mr. Kern at his office, were drawn by him at the house, at the time they were executed; that Mr. Crumb's will was read over to him, and was also read by him, before it was executed.

Without making any findings of fact at this time as to whether the will in question was drawn and executed as Mrs. Crumb says it was, or as Mr. Kern swears it was, we come to the legal proposition suggested by the evidence of Mr. Kern, and hold that it is not necessary to the valid execution of a will that it should be read by the testator or to him, provided it was drawn according to his directions, and he was informed before he signed it that it had been so drawn. The law in relation to the execution of wills is as follows: "Every last will and testament of real and personal property, or both, shall be executed and attested in the following manner: (1) It shall be subscribed by the testator at the end of the will. (2) Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him, to have been so made to each of the attesting witnesses. (3) The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament. (4) There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator." It will be observed from above that every provision of the statute was complied with by Mr. Crumb, so that in this respect there is no defect of execution. It is claimed, however, by the contestant that over

and beyond those statutory requirements there are certain conditions and pre-cautions which must exist and be complied with, and among them that the will must be read by or to the testator before its execution. We concede that this ought to be done in every case, but so long as the statute does not require it to be done, we suppose courts are powerless to compel the performance of a duty so just and reasonable, so necessary, indeed, for the protection of the testator and his legatees or heirs. In the *White Case*, 15 N. Y. St. Rep. 753, we said: "We think it is the duty of witnesses to wills to know by inquiry of the testator or otherwise whether or not he has personal knowledge of the contents of the paper he is about to sign as his last will and testament. Un-less this is done there might not be any evidence that the will had ever been read to or by him; no evidence that he ever had knowledge of its contents; and thus opportunity would be afforded to take advantage of his confidence or his carelessness to impose a will upon him not in accordance with his di-rections or intentions. Especially would this be so in case of the aged, sick, or infirm, who might be powerless to protect themselves from being sur-rounded by those who would not hesitate to benefit themselves by fraud, co-ercion, or undue influence, and possibly crime." The present case illustrates the propriety of the above suggestions, for if the attesting witnesses had known that the will was read to or by the testator, the Crumb estate would not have been compelled to litigate the question as to the legal execution of the will, and would thus have been spared the expense it has incurred. Sub-scribing witnesses to wills ought to be able to satisfy the court that the testa-tor has personal knowledge of the contents of the paper he signs and declares to be his last will; ought to know that it has been read to or by him, either from hearing it read, or from the declarations of the testator that he knows the contents of his will. But we recognize the fact that a testator may, with-out reading his will or hearing it read, have such knowledge of his will as will be sufficient to satisfy the court beyond any doubt that he was familiar with its contents, and there was no mistake, or fraud, or misunderstanding in its drafting or its execution. That Mr. Crumb had full knowledge of the contents of his will before he signed it is freed from any doubt or suspicion by the evidence of Mr. Kern, who testifies that he made a written memorandum of Mr. Crumb's instructions and directions; that he drew the will in exact ac-cordance with these directions; and that before the will was executed he told the testator he had drawn the will as he had directed him to draft it; and the memorandum thus made, is produced and put in evidence, showing that the will was written as directed; so there can be no question that he had knowledge of the contents of his will if truthful information as to its contents is such knowledge as will satisfy the court upon the point, and comply with the legal requirements necessary for the due execution of a will. If he had read the will himself, or had it been read to him by Mr. Kern, he would have known no more of its contents than he knew when he was told that it had been drawn as he directed. The information conveyed to him a knowledge of all its pro-visions, because he knew what he had directed Mr. Kern to insert in his will. He accepted this statement of Mr. Kern as true, and acted upon that belief; and the evidence conclusively shows he was not deceived as to its contents. The reading of the will to or by the testator, if he has given directions as to its provisions, is simply a matter of precaution and prudence to prevent any question arising as to whether he is fully and correctly apprised of its con-tents, and to impress upon the memory of the attesting witnesses the fact, if they or either of them were present when it was read, that the testator knew the contents of his will, and gave a deliberate and intelligent assent to its pro-visions.

All that the law requires on this point is that it shall appear by satisfactory evidence that, in some suitable and proper manner, the testator understood the contents of the instrument he was signing; and it is only in exceptional

cases that it must be made to appear that the will was read to the testator, and explained to him. If a person is in health, of ordinary intelligence and ability, able to read and write, the necessity of proving that the will was read to or by him at or before its execution does not exist, because the fact that he executed it in the manner required by the statute creates the legal presumption that he was aware of its contents. If, however, he is unable to read, or his capacity to do so is doubtful, it has been held that it must appear that the will was read to him, or that it conforms strictly to his instructions; and in such cases it is the duty of the witnesses to make inquiry of the illiterate testator, and ascertain whether the will is in accordance with his wishes. In a majority of cases men employ attorneys to draw their wills, because they do not feel competent to give expression to their intentions in a legal manner, or in proper form; while others employ them because they are unfamiliar with the requirements of the statute; but in either case, as in other cases when an agent is employed, the testator adopts the language of those who give expression to his wishes and his instructions, and makes it his own. When a will thus drawn is executed by him as required by law, the manner in which its contents are communicated to him before its execution is immaterial, provided it is so done that he clearly understands and approves of all its provisions. If an attorney is employed by a competent and intelligent testator to draw his will, and, when drawn, places it before him, and says the will is drawn according to his instructions, and the evidence upon its probate shows the statement to be true, he has such knowledge of the instrument he declares to be his will as answers the requirements of the law, and fulfills the exacting conditions of courts, relating to its execution. The law has not specified or limited the manner in which knowledge of the contents of wills shall be communicated to testators, and until this is done courts must accept such evidence as will satisfy them of the fact, applying the same tests to the credibility of witnesses who claim to impart the information to testators, as exist in any other legal proceeding. Its weight, its convincing power, will be for the court to determine after it has learned all the circumstances under which it was imparted, and which surrounded the testator at the time of the execution of the will, especially his physical and mental condition, his ability to know and clearly understand and appreciate the information as to its contents, the sources of his information, and the character and integrity of the witnesses who may give their evidence in court. In this case Mr. Crumb, had knowledge of the contents of his will, because he had truthful information of what it contained. 'He was made aware that his instructions for the disposition of his property had been strictly followed. He had the intelligence and the ability to comprehend and understand the statement of Mr. Kern that he had drawn the will as he requested, and sufficient confidence to be convinced of the truth of what was said to him; and these facts were equivalent to reading the will himself, or of having it read to him. By holding, as we do, that the will was properly executed in this respect, we do not intend to assert that the omission to have a will read by or to a testator might not in some cases be sufficient ground for its rejection; all we maintain is that it is not an absolute prerequisite to its valid execution in all cases. But, notwithstanding the conclusion at which we have arrived, we still insist that it is the duty of testators to read their wills or have them read to them by some one in whom they have confidence, in order that the court may have conclusive evidence that they clearly understand, sanction, and approve all their provisions, because, if this is not done, a court might hesitate, and possibly refuse, sometimes to rely upon the evidence offered to prove the fact that the testator had knowledge of the contents of his will, and so reject its probate. The law has established certain safeguards in order to have conclusive, or at least satisfactory, evidence of the proper execution of wills; and the more clearly they are observed, the less likely will there be objections to their probate, and the·

more surely and certainly will the intentions of testators be carried into effect. In *Worthington* v. *Klemm*, 144 Mass. 167, 10 N. E. Rep. 522, the evidence was that the attorney drafted the will according to the instructions of the testatrix; that he offered to read it to her, but she declined, saying he could do so at some other time, and the will was never read to or by her. The court found as facts in the case that the contents of the paper when signed by her were what she intended they should be, and what she believed them to be, and she believed the instrument to be duly executed as her will. The court said: "It is plain that on such a finding the will must be allowed, unless the law requires that a will be read by or to the person executing it. Such is not the law. It is sufficient if the court is satisfied, by competent evidence that the contents of the will were known to and approved by the person executing it at the time it was executed as a will." Within the doctrine of this case, which we hold to be sound law, there can be no doubt what our decision must be. The preservation of the written memorandum containing the directions of Mr. Crumb for his will leaves no possible chance for the existence of any mistake as to what the contents of the will should be, nor can there be any doubt but Mr. Kern, before its execution, told the testator that it contained what he had been instructed by him to insert in his will. These two facts being undenied and established by competent evidence to the satisfaction of the court, we see no reason why the will in question was not properly executed, and a decree will therefore be entered in accordance with this decision.